**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| **KEVIN JUSTIN,** ) <br> 1213 McAdoo Avenue ) <br> Baltimore, MD 21207 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **DOUGLAS A. COLLINS, Secretary,** ) <br> DEPARTMENT OF VETERANS AFFAIRS ) <br> ) <br> *Serve*: ) <br> ) <br> Secretary Douglas A. Collins ) <br> Department of Veterans Affairs ) <br> 810 Vermont Ave, N.W. ) <br> Washington, D.C. 20220 ) <br> ) <br> U.S. Attorney General Pam Bondi ) <br> 950 Pennsylvania Avenue, NW ) <br> Washington, D.C. 20530 ) <br> ) <br> Jeanine Ferris Pirro, U.S. Attorney ) <br> For the District of Columbia ) <br> U.S. Attorney's Office for DC ) <br> 601 D Street, NW ) <br> Washington, D.C. 20530 ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:26-cv-1059 <br><br> **COMPLAINT &** <br> **JURY DEMAND** <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> DATE FILED: March 27, 2026 |

**COMPLAINT**

  **COMES NOW** Plaintiff, Kevin Justin, hereinafter "Plaintiff" or "Mr. Justin," by and

through his undersigned counsel, and sues Douglas Collins, Secretary, Department of Veterans

Affairs ("VA" or "Defendant"), and for cause of action states, as follows:

**NATURE OF THE CASE**

1.  Plaintiff brings this civil action against the above-named party pursuant to Title VII

of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* for relief from Defendant's unlawful discrimination of Mr. Justin on the basis of Retaliation (engagement in protected EEO activity) and being subjected to a hostile work environment during the course of his employment with Defendant.

2.    Defendant, U.S. Department of Veterans Affairs, a federal agency, discriminated against Plaintiff on the basis of Retaliation (prior protected activity), and subjected him to a hostile work environment during the relevant time period.

3.    On February 18, 2026, Plaintiff received his Appeal Closure Letter from the Office of Federal Operations, providing that Plaintiff had ninety (90) days to file a civil action in the appropriate federal district court.

## PARTIES

4.    Plaintiff is currently domiciled at 1213 McAdoo Avenue, Baltimore, Maryland 21207. Plaintiff is a resident of the State of Maryland and is a United States citizen.

5.    At all relevant times, Plaintiff was an employee of the U.S. Department of Veterans Affairs, Baltimore Veterans Affairs Medical Center ("VAMC"), as a Registered Nurse, VN-02, Step 1, in Baltimore, Maryland.

6.    Defendant Secretary Douglas Collins ("Secretary Collins") is named in his official capacity as the Secretary for the United States Department of Veterans Affairs (the "VA" or "Agency").

7.    Secretary Collins is directly liable for the discriminatory actions or omissions of his agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

**JURISDICTION**

8.      This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Jurisdiction is also appropriate as the actions complained of herein are actions and employment practices of Defendant, an agency of the federal government.

9.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an agency of the federal government, that operates within the District of Columbia, and which occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

**EXHAUSTION OF REMEDIES**

Plaintiff has exhausted his administrative remedies as follows:

10.      Plaintiff timely initiated contact with the Defendant's Equal Employment Opportunity ("EEO") Office on October 30, 2022.

11.      On November 8, 2022, Mr. Justin had the initial interview with an EEO counselor regarding his informal EEO complaint.

12.      On January 18, 2023, Mr. Justin received a Notice of Right to File ("NORF").

13.      On March 8, 2023, the Agency issued a notice of Partial Acceptance.

14.      On March 20, 2023, the Agency by and through EEO Manager, Karen Mason, denied Mr. Justin's request to amend his Notice of Partial Acceptance, and was instead informed that the information Mr. Justin was trying to amend will be naturally expounded upon during the investigative process.

15.    On April 7, 2023, the Agency accepted the following claims for consideration on Mr. Justin's matter:

> Whether Complainant was subjected to a hostile work environment based on Reprisal as evidenced by the following events:
>
> a) On or around September 30, 2022, Complainant discovered his original FY 2021 performance appraisal had been removed, and Bernadette Briggs (BB), Nurse Manager, replaced it with a different copy that did not include his accomplishments;
>
> b) On October 7, 2022, BB denied Complainant's request to change his employment status from full-time to intermittent;
>
> c) On October 21, 2022, BB issued Complainant a Written Counseling for misconduct.

16.    On April 24, 2023, the Agency assigned Mr. Justin's matter for investigation to an external contractor, Christina Wong, The Ravens Group, Inc., tasked with serving as the investigator in the matter (hereinafter "EEO Investigator").

17.    On June 13, 2023, the EEO Investigator finalized her portion of the investigation and issued a Report of Investigation Summary.

18.    However, neither Mr. Justin nor his counsel received *any* correspondence regarding the aforementioned completion, nor did they ever receive the *Notice of Advisement of Rights*.

19.    On August 22, 2023, the Agency referred Mr. Justin's matter to the Department of Veterans Affairs for Final Agency Decision alleging that Mr. Justin had waived the right to request a hearing by failing to respond within thirty (30) days of receipt to the *Notice of Advisement of Rights* dated June 28, 2023.[1]

---

[1] The Agency asserted that Mr. Justin received the notice and investigative file *via* email on June

20.    Unbeknownst to Mr. Justin and his noticed counsel, the Agency sent the Report of Investigation ("ROI") to Mr. Justin's work e-mail only.

21.    At the time, Mr. Justin was on medical leave and did not have access to his work e-mail address, which was known to the Agency.

22.    On August 30, 2023, the Agency was once again made aware that Mr. Justin had legal representation.

23.    On September 20, 2023, the Agency issued a Final Agency Decision ("FAD").

24.    On September 22, 2023, Mr. Justin filed, through noticed counsel, a timely hearing request based on when he had actually received the *Notice of Advisement of Rights*.

25.    On September 26, 2023, Mr. Justin received a referral for hearing on his case.

26.    As part of the referral for hearing, Mr. Justin and his attorney received the complete investigative package, including the ROI, when the Agency uploaded the documents to EEOC Portal.

27.    On October 4, 2023, the Agency allegedly filed a Motion to Dismiss.

28.    Again, the Agency never served its Motion on Appellant or Appellant's counsel.

29.    At the time the Agency filed its motion, Appellant was not aware an administrative judge had even been assigned.

30.    Prior to the Order of Dismissal, the EEOC had not issued any order relating to case processing or deadlines.

31.    On November 16, 2023, Mr. Justin's case was dismissed by Administrative

---

30, 2023. However, Mr. Justin's counsel was not included in the correspondence. The Agency cannot and has not demonstrated proper service of the notice and investigative file.

Judge Christal Folashade (hereinafter "Administrative Judge").

32.    Upon receiving the November 16, 2023, *Order of Dismissal*, Appellant became aware for the first time that the Agency had filed a Motion to Dismiss.

33.    On November 21, 2023, the Administrative Judge issued a *Corrected Order of Dismissal*.

34.    In the *Corrected Order of Dismissal*, the Administrative Judge asserted that "the record [was] not clear as to whether Complainant's representative was served with the Motion to Dismiss or the FAD."

35.    On December 18, 2023, Mr. Justin filed an appeal with the Office of Federal Operations ("OFO") requesting further reconsideration to the Agency's FAD.

36.    Subsequently, the OFO acknowledged Mr. Justin's appeal.

37.    Mr. Justin filed his OFO Appeal brief on January 17, 2024.

38.    The Agency filed its Reply Brief on February 16, 2024, and for the first time, properly served Appellant.

39.    On December 12, 2025, nearly two years after he filed his appeal, Mr. Justin, through his noticed attorney, notified the OFO that he wished to withdraw his appeal of EEOC No. 530-2023-00317X, Agency No. 2004-512-2023-149017 as more than 180 days had passed since Appellant's Notice of Appeal was filed.

40.    On February 18, 2026, Plaintiff received his Appeal Closure Letter from the OFO, providing that Plaintiff had ninety (90) days to file a civil action in the appropriate federal district court.

6

41.     Plaintiff hereby timely files this action within ninety (90) days after the OFO closure letter was issued.

## **RELEVANT FACTS**

42.     Mr. Justin was employed by the Agency as Registered Nurse, VN-02, Step 1 at the Baltimore Veterans Affairs Medical Center ("VAMC"), Baltimore, Maryland.

43.     Mr. Justin is a service-connected combat veteran.

44.     Mr. Justin was first hired by the Agency on or about March 29, 2020.

45.     On August 29, 2021, Mr. Justin accepted a voluntary reassignment to the 5A Surgical Specialty Clinic.

46.     Prior to Mr. Justin's acceptance of voluntarily transfer to the 5A Surgical Specialty Clinic, Meshondra Collins was Mr. Justin's first line supervisor.

47.     After she was no longer his supervisor, Ms. Collins maintained access to Mr. Justin's eOPF and changed his performance appraisal despite the fact that she was no longer his reporting official.

48.     During her time as his supervisor, Ms. Collins illegitimately reassigned Mr. Justin to several different medical units within the facility under the guise of "reorientation."

49.     When Ms. Collins reassigned Mr. Justin under the guise of "reorientation" she did so without appropriately notifying Human Resources.

50.     Mr. Justin was not allowed union representation when he attempted to raise the issue of his temporary reassignment with Ms. Collins.

51.    At all relevant times herein, Mr. Justin's first line supervisor was Bernadett Briggs, Nurse Manager, Surgical Pre-Op, 5A Surgical Specialty and ENT Clinic (hereinafter, "Ms. Briggs").

52.    At all relevant times herein, Mr. Justin's second line supervisor was Audrey Pinnock, Supervisory Registered Nurse, Senior Leadership, Nursing Perioperative (hereinafter, "Ms. Pinnock").

53.    In or around August 2022, Mr. Justin requested to be scheduled off every Tuesday and Thursday, and work sixteen hours on the weekends or evening in a different area from September 2022, to December 2022.

54.    In or around August 2022, Ms. Briggs denied Mr. Justin's request for a status change from full-time employee to intermittent employee, alleging that Mr. Justin's request would only be approved if he was working in a 24-hour, open inpatient unit rather than in his current 40-hour, outpatient clinic.

55.    On September 1, 2022, Mr. Justin was awarded a "Gold VA Pin Award" for his exceptional customer service and outstanding patient care, and received a Gold VA lapel pin.

56.    On September 7, 2022, Mr. Justin requested in writing to change from full-time work status to intermittent work status to return to school and pursue graduate-level coursework.

57.    On September 23, 2022, Mr. Justin reiterated his desire to transition to intermittent status work.

58.    In the Fall of 2022, Ms. Briggs intentionally slowed down the process of transitioning Mr. Justin to intermittent work status and forced him to use leave time, causing him to incur a debt to the VA of $1,995.00.

59.     On September 28, 2022, Ms. Briggs verbally told Mr. Justin to sign his 2021 Performance Appraisal so that she could process it.

60.     Additionally, on September 28, 2022, Ms. Briggs informed Mr. Justin that the 2021 Performance Appraisal would be returned to him after it had been properly processed.

61.     Following Ms. Briggs' conversation, Mr. Justin signed the 2021 Performance Appraisal.

62.     On September 30, 2022, Mr. Justin discovered that the original 2021 Performance Appraisal had been replaced upon reviewing his Electronic Official Personnel File ("eOPF").

63.     Mr. Justin discovered that the original 2021 Performance Appraisal had been removed and replaced with a falsified copy, signed by Ms. Briggs and Ms. Pinnock as the evaluators during the rating period of the performance appraisal, and this was facilitated by Kristie Sayer in Human Resources.

64.     After Ms. Sayer's reassignment, changes were made to Mr. Justin's SF50 that were digitally signed by Christine Bruns, Chief of Human Resources for VISN 5, changing Mr. Justin's appointment status, making it easier for him to be dismissed.

65.     Mr. Justin had previously filed an EEO complaint on July 19, 2021, which was respectively assigned to Case No., 2004-0512-2021104771.

66.     Ms. Briggs and Ms. Pinnock were identified as the Responsible Management Officials ("RMOs") in that EEO complaint, and were aware of Mr. Justin's prior EEO activity.

67.     On October 5, 2022, Ms. Briggs submitted a request to Natashia Boston, Program Analyst, and Heather Hipsley, ADPCS Business Manager, on behalf of Mr. Justin requesting a change to intermittent status.

68.     On October 5, 2022, Ms. Briggs e-mailed Mr. Justin and requested an appointment to discuss a complaint filed against Mr. Justin by a co-worker, Pamela Oliver, (hereinafter "Ms. Oliver").

69.     Pursuant to Ms. Briggs' e-mail, the meeting was intended to discuss a reported incident between Mr. Justin and Ms. Oliver that had allegedly taken place on October 3, 2022, at approximately 3:50 p.m.

70.     Pursuant to Ms. Briggs' e-mail, Mr. Justin had the right to have a union representative with him during the meeting.

71.     Additionally, Ms. Briggs requested that Mr. Justin provide her with a written response regarding Ms. Oliver's allegation by October 17, 2022, at 9 a.m.

72.     On October 7, 2022, Mr. Justin e-mailed Ms. Briggs requesting a meeting time and suggested that the meeting be rescheduled to allow him time to secure his union representation.

73.     However, Ms. Briggs ignored Mr. Justin's inquiry and, instead, responded to Mr. Justin's e-mail stating, "I need a written reply from you today [October 7, 2022] as the allegation is serious. I can meet today with you and whomever from [the Union] is available."

74.     On October 14, 2022, Ms. Briggs informed Mr. Justin and his union representative that "no meeting with this writer [referring to herself] is required. This writer is asking for a written statement from you regarding a reported incident on Monday, October 3, 2022, occurring at approximately 3:50 pm. Please submit your statement to this writer by C.O.B., Monday, October 17, 2022."

75.     On October 17, 2022, Mr. Justin provided Ms. Briggs with the requested Report of Contact regarding the incident that occurrent on October 3, 2022.

10

76. On October 21, 2022, Mr. Justin received a written counseling, dated October 19, 2022, for alleged misconduct and refused to sign it without union representation.

77. On October 30, 2022, Mr. Justin initiated contact with the Defendant's Equal Employment Opportunity ("EEO") Office.

78. On November 4, 2022, Ms. Briggs e-mailed the written counseling to Mr. Justin.

79. On November 11, 2022, Mr. Justin filed a complaint with the Office of Special Counsel regarding the falsification of his performance appraisal, and the issues surrounding his conversion to intermittent employee status by Ms. Briggs and Ms. Pinnock.

80. On November 18, 2022, Ms. Briggs informed Mr. Justin that upon approval from the HR department of his request for intermittent work status, the intermittent status change would have an effective date of September 11, 2022, and as such, Mr. Justin would likely incur an indebtedness to the VA.

81. On or about November 21, 2022, Mr. Justin received notification from Diana Choi, Director of Patient Care Services, offering Mr. Justin the options to modify the date of conversion from full time to intermittent status to avoid incurring a debt.

82. Mr. Justin responded to Ms. Choi informing her that there was an active EEO investigation and rejected the offer to modify the date of conversion.

83. Ms. Choi responded within the week that she was already aware of the EEO investigation.

84. In late November 2022, Mr. Justin filed a complaint with the Office of the Inspector General regarding the falsification of his performance records.

85. In late November or early December 2022, Mr. Justin filed a complaint with the

Office of Personnel Management *via* Kiran Ahuja regarding the changes to his eOPF files and documents replaced.

86.     On or around December 13, 2022, Ms. Briggs issued a Memorandum dated December 5, 2022, wherein she rescinded the written counseling she had issued to Mr. Justin.

87.     In July 2023, Marcus Nicholson caused Mr. Justin to incur a debt to the VA of over $4,000.00 when Mr. Nicholson filled out a timecard showing eighty (80) hours worked even though he was aware that Mr. Justin was on leave for an injured leg during that time.

88.     When the VA caused Mr. Justin to incur debts as a result of mistaken or fraudulent timekeeping, the amount removed from Mr. Justin's subsequent paychecks to repay the debt far exceeded the amount he owed.

89.     Based on information and belief, Christine Bruns falsified Mr. Justin's employment status as a temporary employee in mid-2023, so that it would be easier to terminate Mr. Justin.

90.     Despite Mr. Justin repeatedly notifying Mr. Jonathan Eckman of the issues in this complaint throughout 2022 and 2023, Mr. Eckman directed Mr. Justin back to the individuals in his chain of command who were creating the hostile work environment for Mr. Justin.

91.     Despite Mr. Justin repeatedly notifying Mr. Robert Walton of the issues in this complaint throughout 2022 and 2023, Mr. Walton directed Mr. Justin back to the individuals in his chain of command who were creating the hostile work environment for Mr. Justin.

92.     In August 2023, the VA falsely reported to Mr. Justin's insurance company – Blue Cross and Blue Sheild – that he was not an employee causing Mr. Justin to have to produce paystubs for his insurance company showing the automatic deductions for insurance coverage.

93.     During the course of his employment with the VA, someone changed his personal

records to reflect an incorrect personal email address in order to hinder his progression through his graduate level education and prevent him from receiving future job offers in a timely fashion.

94. During the course of his employment with the VA, someone falsified his Thrift Savings Plan and changed his retirement plan from FERS to CSRS despite the fact that Mr. Justin was not old enough to be eligible for the CSRS plan.

95. Mr. Justin is a service-connected combat veteran.

96. Mr. Justin was at all times relevant to this complaint, also a patient at the Baltimore VA Medical Center.

97. Due to the Agency's actions against Mr. Justin as an employee, he has been in fear of the Agency impacting his health-related matters and his health care by the Agency.

## CAUSE OF ACTION

## COUNT ONE– VIOLATION OF TITLE VII

**(Discrimination and Hostile Work Environment on the Basis of Reprisal)**

98. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

99. Title VII prohibits discrimination in the terms, conditions, and privileges of employment due to an individual's race, color, sex, and for prior participation in protected activity.

100. Title VII prohibits retaliation in employment and protects employees engaging in statutorily protected activity.

101. As a government agency, the United States Department of Veterans Affairs must comply with Title VII.

102. Mr. Justin engaged in protected, EEO activity when he filed an EEO complaint

13

on July 19, 2021, which was respectively assigned as Case No. 2004-0512-2021104771.

103.    Plaintiff is a member of a protected class based on his prior, protected activity.

104.    Defendant became aware of Mr. Justin's EEO complaint filed on July 19, 2021, and took action, thereafter, in retaliation.

105.    Both of Mr. Justin's supervisors, Ms. Briggs and Ms. Pinnock, stated as part of their EEO investigative affidavit that they were aware of Mr. Justin's previous EEO activity.

106.    Mr. Justin was subjected to an adverse action when he had his 2021 Performance Appraisal modified without warning.

107.    Mr. Justin was subjected to an adverse action when he was denied the possibility of inspecting the contents of a report of contact containing allegations against him regarding an alleged incident on October 3, 2022, that resulted in him being issued a written counseling.

108.    Mr. Justin was subjected to an adverse action when he was not afforded the possibility of meeting with his first line supervisor, Ms. Briggs, regarding the allegations contained in the report of contact.

109.    Mr. Justin was subjected to an adverse action when he incurred unnecessary debt with the VA because of the Agency's own failure to process Mr. Justin's request to transfer to an intermittent work duty status.

110.    Defendant's management officials took the adverse employment actions against Plaintiff as described *supra*.

111.    The retaliatory actions that Plaintiff experienced affected a term, condition, or privilege of his employment, by tarnishing his reputation, denying his career progression, rating him unfairly, subjecting him to unpredictable work expectations, invasive, unwarranted, and

14

public investigations held out to be, at times, of a criminal nature, and others.

112.    The foregoing actions also created a hostile work environment against Plaintiff in retaliation for protected EEO activity and engaging his union in violation of Title VII.

113.    Other employees who were similarly situated, were treated more favorably than Plaintiff in the terms and conditions of employment.

114.    The foregoing actions also created a hostile work environment against Plaintiff because of reprisal for his prior protected EEO activity, and engaging his union, in violation of Title VII.

115.    Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his protected activity.

116.    Defendant's management officials were motivated in its adverse employment actions against Plaintiff by virtue of animus towards Plaintiff caused by Plaintiff's protected EEO-related activity.

117.    The foregoing actions by Defendant constitute retaliation against Plaintiff in violation of Title VII.

118.    As a result of the Defendant's discrimination and hostile work environment harassment as described herein, Plaintiff is entitled to all damages available to him under law, including compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, psychological injury, humiliation, embarrassment, and mental and emotional distress.

119.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages –

15

including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, –and is entitled to all available legal and equitable remedies.

120. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

121. Plaintiff has incurred loss of reputation, and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

122. The Defendant is responsible for the hostile work environment and reprisal the Plaintiff faced as a result of his supervisors, Ms. Briggs and Ms. Pinnock by virtue of *respondeat superior*, in that they were all acting within the scope of their employment at the time of the actions about which Plaintiff complained.

123. As a result of the Defendant's discrimination and hostile work environment harassment as described herein, Plaintiff is entitled to all damages available to him under law including compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, psychological injury, humiliation, embarrassment, and mental and emotional distress, he suffered.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Award compensatory damages;

    b. Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendant's unlawful conduct;

c.    Award any out-of-pocket expenses incurred as a result of Defendant's unlawful conduct;

d.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e.    Award equitable, declaratory, and injunctive relief; and

f.    Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

124.    Plaintiff incorporates by reference to, all facts, law, and/or allegations contained in the preceding paragraphs, as if fully set forth herein.

125.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, presents clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Order the Defendant to institute a policy and procedure advising its employees about anti-discrimination laws and implementing enforcement mechanisms;

b.    Order Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.    Order Supervisory training for the supervisors at issue herein; and

d.    Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

126.    Plaintiff demands a trial by jury of all issues in this case so triable.


Dated: March 27, 2026

Respectfully submitted,

*/s/ Stephanie Rapp-Tully*
Stephanie Rapp-Tully, Esq.
DC Bar No. 1016900
Partner
TULLY RINCKEY PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
Tel: (202) 787-1900
Fax: (202) 640-2059
Email: SRappTully@fedattorney.com

*Attorney for Plaintiff*